*Formatted for Electronic Distribution*                                                                *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

**In re**
    Turner & Cook, Inc.,                                                                Chapter 7
        Debtor.                                                                                Case # 10-11344
_____

**John R. Canney, III, Trustee,**
        Plaintiff,                                                                           Adversary Proceeding
    v.                                                                                                      # 11-1033
**Fisher & Strattner, LLC,**
**Mark Fisher, et al.,**
        Defendants.
_____

Filed & Entered
On Docket
March 14, 2014

| Appearances: | John R. Canney, III, Esq. | Peter Bilowz, Esq. | Mr. Mark Fisher |
|---|---|---|---|
| | Rutland, VT | Goulston & Stores, P.C. | Jacksonville, VT |
| | Chapter 7 Trustee, Plaintiff | Boston, MA | Pro se *Defendant* |
| | | For the Trustee | |

**MEMORANDUM OF DECISION**
**GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      The Chapter 7 Trustee (the "Plaintiff" or "Trustee") has filed a motion for summary judgment seeking avoidance of certain alleged fraudulent transfers from Turner & Cook, Inc. ("T&C" or the "Debtor") to Mark Fisher (the "Defendant" or "Mr. Fisher") and recovery of transferred property. For the reasons set forth below, the Court finds no material facts are in dispute with respect to some of the alleged fraudulent transfers, and the estate is entitled to relief with respect to those transfers. To the extent the Trustee has demonstrated he is entitled to judgment as a matter of law with respect to the undisputed transfers, summary judgment is granted. Where there are facts in dispute or the Trustee has failed to meet his burden of demonstrating entitlement to relief, summary judgment is denied.

1

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares the claims addressed by the instant summary judgment motion to be core matters under 28 U.S.C. § 157(b)(2)(F) and (H), over which this Court has constitutional authority to enter a final judgment. To the extent any of the claims in the Plaintiff's complaint are outside this Court's constitutional authority pursuant to Stern v. Marshall, 1325 S. Ct. 56 (2011), the Plaintiff filed a statement indicating he consents to this Court entering a final judgment (doc. # 126), and due to the presence of disputed facts, those claims are not addressed by this decision.

## PROCEDURAL HISTORY

The Debtor's creditors filed an involuntary Chapter 7 petition against it on October 21, 2010, and the Court entered an order for relief on December 15, 2010 (ch 7 # 10-11344, doc. ## 1, 14). On December 5, 2011, the Chapter 7 Trustee filed a complaint initiating this adversary proceeding (doc. # 1).[1] On June 1, 2012, the Trustee filed an amended complaint seeking a determination that the Debtor had made certain fraudulent transfers to the Defendant (doc. # 33). The Court entered a scheduling order on July 30, 2012, which gave the parties until March 4, 2013 to file all dispositive motions (doc. # 46). In December 2012, stipulations of dismissal were entered (doc. ## 65, 66) against two of the original defendants. Subsequently, the Court entered an order extending the due date for dispositive motions to May 8, 2013, based in part on Mr. Fisher's delays in fulfilling discovery request (doc. # 52).

On November 15, 2012, however, the Trustee moved for entry of default against Defendant Fisher, for failure to respond to the amended complaint (doc. # 56). After a hearing held on the application on December 18, 2012, the Court granted Mr. Fisher's request for an extension of time to respond to the amended complaint, and ordered him to respond by January 21, 2013 (doc. ## 64, 71). On January 23, 2013, Mr. Fisher moved for an extension of time to respond, citing his health condition and *pro se* status (doc. # 74). After a hearing held on January 25, 2013, the Court ordered Mr. Fisher to provide evidence of his health condition and turn over certain discovery documents; it set a further hearing on the matter for February 19, 2014 (doc. # 77). The Court then granted additional extensions of time for Mr. Fisher to turn over the required documents and held continued hearings on the matter on March 26 and May 21, 2013 (doc. ## 88, 93). The Trustee filed a second amended complaint (the "Second Amended Complaint") on May 16, 2013, to which the Defendant responded by cursorily denying the majority of the allegations (doc. ## 99, 113). The Court entered a resulting scheduling order setting further deadlines for the

---

[1] Unless otherwise noted, all citations to the record refer to AP # 11-1033, Canney v. Fisher & Strattner, LLC, et al.

2

production of documents and requiring all dispositive motions to be filed by January 2, 2014 (doc. # 108).

Based on Mr. Fisher's non-compliance with production of certain documents, the Court granted an additional and final extension of time in which to file dispositive motions (doc. ## 111, 122). The Trustee then filed a timely motion for summary judgment with memorandum of law, on January 30, 2014 (doc. # 131) (collectively, the "Motion"). Pursuant to the order entered February 4, 2014, Mr. Fisher's response to the Motion was due February 21, 2014 (doc. # 140). In the order, the Court specifically informed the *pro se* Defendant that if he failed to respond to the Motion, and failed to file a motion setting forth cause for an extension of time to do so, by February 21, 2014, he risked having the Court enter a default judgment against him. On February 21, 2014, Mr. Fisher filed a motion for an extension of time to respond to the Motion, which the Trustee opposed (doc. ## 142, 143). The Court denied the request, concluding that Mr. Fisher's last-minute request for a further extension of time was merely an attempt to escape judgment for another day, at the expense of the Debtor's estate and its creditors (doc. # 144).

Accordingly, the Court treated the Motion as unopposed, and took the matter under advisement.

## UNDISPUTED MATERIAL FACTS

Based upon the record in this case and adversary proceeding, and pursuant to Vt. LBR 7056-1(a)(3),[2] the Court finds the following facts to be material and undisputed.

1. T&C was a residential construction company based in Jacksonville, Vermont. T&C focused on custom, "high end" home construction and historical renovations and restorations in New England. Statement of Undisputed Facts ("SUMF") (doc. # 133), ¶ 1; Declaration of James Strattner ("Strattner Decl.") (doc. # 134), ¶ 2.
2. T&C was managed by Mr. Fisher as director and vice president and James Strattner as director and president.[3] SUMF, ¶ 2; Strattner Decl., ¶¶ 1-2.
3. In or around December 2001, T&C entered into a construction contract with Patrick and Carolyn Sullivan for construction of an approximately 10,000 square foot home in Sudbury, Massachusetts. T&C worked on the construction of the Sullivans' home until February 2006, when T&C entered into a dispute concerning the construction and its costs. The Sullivans formally terminated T&C as contractor in the summer of 2006. SUMF, ¶ 3; Strattner Decl., ¶ 6.

---

[2] Vt. LBR 7056-1(a)(3) provides that "[t]he respondent is deemed to have admitted all facts in the movant's statement of material undisputed facts except to the extent that party controverts them in a statement of disputed material facts." Because the Defendant did not file any statement of disputed material facts, the Plaintiff's statement of undisputed material facts is accepted in its entirety for the purposes of the instant motion for summary judgment.

[3] Mr. Strattner is also a named defendant in this adversary proceeding. According to the Motion, the Plaintiff reached an agreement with him after mediation. However, the Plaintiff never moved to dismiss Mr. Strattner from the instant proceedings.

3

4. On or around October 24, 2006, Anthony Lee – a forensic accountant hired by the Sullivans following T&C's cessation of work on the Sullivans' project – provided T&C with an accounting for the project, alleging adjustments and credits due to the owners in the amount of approximately $4.5 million (the "Lee Accounting"). SUMF, ¶ 4; Strattner Decl., ¶ 7.

5. In April 2007, T&C filed an arbitration demand as a result of a disagreement among the parties concerning the Lee Accounting. On May 17, 2007, the Sullivans submitted a counterclaim against T&C in the arbitration based, in part, on the Lee Accounting. On October 1, 2009, the arbitrators awarded the Sullivans $3,270,412, or 75% of their original claim. The arbitration award was confirmed by the Massachusetts Superior Court on March 9, 2010. SUMF, ¶ 5; Strattner Decl., ¶¶ 8-10.

6. From November 2006, after T&C was on notice of the Sullivans' multimillion dollar claim, through the date of the involuntary petition against T&C in October 2010, T&C failed to carry any amount of liability for the Sullivans' claim on its books. T&C's net worth for this period, as reflected in the balance sheets, never exceeded $1.24 million, and was substantially less for a majority of the period. SUMF, ¶ 6; Strattner Decl., ¶¶ 14-15; doc. ## 134-3 through 134-8 (exhs. 3(a) through 3(nnn)).

7. As of October 13, 2009, T&C had no active projects or employees. SUMF, ¶¶ 7-8; Strattner Decl., ¶¶ 11-12.

8. During the period October 2006 to December 2010, Mr. Fisher had credit card accounts with American Express ("AMEX"). T&C had no credit card account with AMEX. Declaration of Catherine A. Bazal, ¶ 2; SUMF, ¶ 10; Strattner Decl., ¶¶ 16-17.

9. As further detailed in the AMEX Statements and T&C's own financial records, for the four-year period preceding this Court's entry of an order for relief (November 2006 –December 2010), T&C paid AMEX approximately $130,000 for charges made on Mr. Fisher's AMEX credit cards. The vast majority of the payments to AMEX on account of Mr. Fisher's credit card accounts originated from T&C's account with Chittenden Bank, Bank Account ending in 0505 (the "505 Account"). SUMF, ¶ 11; Strattner Decl., ¶ 20.

10. Generally, the 505 Account was not used by T&C to pay T&C project related or overhead expenses, nor payroll. During this period, Mr. Fisher controlled the 505 Account. SUMF, ¶ 11; Strattner Decl., ¶¶ 18-19.

11. The total of AMEX charges paid by the 505 account which are conclusively unrelated to T&C's

business is at least $76,526.91. SUMF, ¶ 12-14; Strattner Decl., ¶¶ 21-22.

12. In late 2008, Mr. Fisher installed a wood boiler in his home and T&C paid for the cost of the wood boiler and its installation. In the summer and fall of 2008, Mr. Fisher or his wife and T&C employee Stephanie Powers signed checks on T&C's 505 Account, paying "Alan K. Hadley, Electrician" $1,487 and Crystal Rock Farm, a seller of wood boilers, $12,719.79. SUMF, ¶ 15; Strattner Decl., ¶ 23.

13. Neither Mr. Hadley nor Crystal Rock Farm was a project related or overhead vendor for T&C during this period and T&C received no benefit for the payments to Mr. Hadley and Crystal Rock Farm. SUMF, ¶ 16; Strattner Decl., ¶ 26.

14. None of the facts related to purchase or installation of the wood boiler serve as the basis for any count in the Second Amended Complaint. See doc. # 99.

15. After October 2009, when T&C no longer had any active projects and no source of income, Mr. Fisher caused T&C to pay Infiniti Financial Services $3,382.70 from the 505 Account for his luxury Infiniti. T&C received no benefit for these luxury car payments. SUMF, ¶¶ 17-18; Strattner Decl., ¶¶ 27-28.

16. Between October 2009 and March 2010, T&C transferred to Mr. Fisher its 2004 GMC Diesel 2500, 2002 Skytrack forklift, John Deere tractor, and 2003 Chevy Silverado. Mr. Fisher signed all related bills of sale both in his individual capacity as buyer, and in his corporate capacity, as Vice President of T&C, as seller. SUMF, ¶ 16; Strattner Decl., ¶ 31; doc. # 81.

17. The total amount due under all bills of sale was $47,700. SUMF, ¶ 20; doc. # 81.

18. During the period October 2009 to April 2010, Mr. Fisher paid T&C a total of $32,150. However, $24,900 of this was credited to Mr. Fisher's shareholder loan account, from which Mr. Fisher borrowed and repaid money. Thus, only $7,250 was actually paid by Mr. Fisher on the total amount due under the bills of sale. Accordingly, Mr. Fisher still owes $40,450 for the purchase of the vehicles and equipment. SUMF, ¶¶ 21-22; Strattner Decl., ¶¶ 29, 33-34.

19. In early 2010, Mr. Fisher consigned T&C's Caterpillar 257B skidsteer, forks, bucket, backhoe, PB15B sweeper and Harley M6 power rake to R.N. Johnson, Inc. ("RN Johnson"), a seller of new and used tractors and construction equipment. RN Johnson paid Mr. Fisher $10,056.67 for the sale of this equipment; T&C received no remuneration. Strattner Decl., ¶¶ 35-36; Declaration of Alan Johnson, ¶¶ 3-4.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  See Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007).  The moving party bears the burden of showing that no genuine issue of material fact exists.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial.  Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party.  See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir 2006).

## DISCUSSION

Under both Vermont law and federal law, a constructive fraudulent transfer occurs when a debtor makes a transfer (i) without receiving a reasonably equivalent value in exchange for the transfer, (ii) at a time when (a) the debtor was insolvent or became insolvent as a result of the transfer, or (b) the debtor reasonably should have believed that it would incur debts beyond its ability to pay as they became due.  9 V.S.A. §§ 2288(a)(2), 2289(a); 11 U.S.C. § 548(a)(1)(B).  A trustee may avoid and recover constructive fraudulent transfers made within four years of the petition date if acting pursuant to Vermont law, and within two years if acting pursuant to federal law.  See 11 U.S.C. §§ 544(b), 548(a)(1); 9 V.S.A. §§ 2291, 2293(2).

In connection with the first element, reasonably equivalent value, courts consider: (i) the market value of what was transferred and received; (ii) whether the transaction took place at arm's length; and (iii) the good faith of the transferee.  See, e.g., In re Rothstein Rosenfeldt Adler, P.A., 483 B.R. 15, 21 (Bankr. S.D. Fla. 2012); see also In re Fitzgerald, 237 B.R. 252, 264 (Bankr. D. Conn. 1999) (stating that a court must consider all facts and circumstances surrounding the transfer).  In deciding whether a debtor received "reasonably equivalent value" for an alleged fraudulent transfer, the court should consider both the direct and indirect benefits flowing to the debtor as a result of the exchange.  In re Akanmu, 502 B.R. 124, 130 (Bankr. E.D.N.Y. 2013).

6

Turning to the second element, insolvency, a debtor is insolvent if the sum of its debts is greater than the value of all of its assets, at a fair valuation. 9 V.S.A. § 2286(a); 11 U.S.C. § 101(32). Insolvency is a factual issue which must be resolved on a case by case basis. See In re Join–In International (U.S.A.) Ltd., 56 B.R. 555, 560 (Bankr. S.D.N.Y. 1986). A court may rely on the balance sheets of the company in determining whether a debtor is insolvent. See In re Bayou Group, LLC, 439 B.R. 284, 332 (S.D.N.Y. 2010). Contingent claims of an entity, including pending lawsuits, should be included in the insolvency calculation. See e.g., In re Sierra Steel, Inc., 96 B.R. 275, 279 (9th Cir. B.A.P. 1989); In re Tronox Incorporated, 503 B.R. 239, 313 (Bankr. S.D.N.Y. 2013); Collier on Bankruptcy, Sixteenth Ed. ¶ 101.32[5]. Thus, it is reversible error to exclude a potential liability from the insolvency calculation merely because the liability is contingent or because the debtor disputes the claim. See In re Sierra Steel, Inc., 96 B.R. at 279; see also In re Ollag Construction Equipment Corp., 578 F.2d 904, 909 (2d Cir. 1978). In determining the proper amount of disputed or contingent liabilities to include in the insolvency calculation, courts should generally value contingent liabilities based upon the probability of the occurrence of the liability. See, e.g., In re Tronox Incorporated, 503 B.R. at 313; In re Davis, 169 B.R. 285, 302 (E.D.N.Y. 1994). When a liability was contingent at the time of the challenged transfers but is reduced to judgment before the court's insolvency determination, however, a court may permissibly use the judgment amount in valuing the contingent liability at the time of the transfers. See, e.g., In re Mama D'Angelo, Inc., 55 F.3d 552, 556 (10th Cir. 1995) (stating that courts "may consider information originating subsequent to the transfer date if it tends to shed light on a fair and accurate assessment of the asset or liability as of the pertinent date . . . [I]t is not improper hindsight for a court to attribute current circumstances which may be more correctly defined as current awareness or current discovery of the existence of a previous set of circumstances."); S.E.C. v. Antar, 120 F. Supp. 2d 431, 434, 443-44 (D.N.J. 2000); In re W.R. Grace & Co., 281 B.R. 852, 869 (Bankr. D. Del. 2002); In re Pilavis, 233 B.R. 1, 7-8 (Bankr. D. Mass. 1999).

As an initial matter, although the Motion asserts that the Plaintiff is entitled to summary judgment on Counts Nine (relating to turnover, pursuant to 11 U.S.C. § 542, of the Debtor's vehicles transferred to the Defendant) and Twenty (relating to the Debtor's payment of the AMEX charges as actual fraudulent transfers) of the Second Amended Complaint, it provides no actual argument on these claims.[4] Further,

---

[4] The Motion also mentions in passing, in the introductory section, that the claims upon which the Trustee seeks relief fall into the categories of "breach of contract and fraudulent transfer claims" in the Second Amended Complaint. Count Thirty-Three of the Second Amended Complaint is one that seeks relief based on Mr. Fisher's alleged breach of contract; however, the Motion neither specifically requests relief on this claim, nor provides any argument on the issue. Accordingly, the Court does not further discuss this cause of action.

7

the SUMF alleges no facts in support of a claim of an actual fraud, and the Court finds that the relief requested in conjunction with the turnover claim is otherwise appropriate as a remedy on the constructive fraud claims discussed *infra*.[5] Accordingly, the Court denies the Motion with respect to Counts Nine and Twenty of the Second Amended Complaint.

Conversely, the Motion provides ample argument with respect to the Debtor's payment of expenses relating to the purchase and installation of a wood boiler in the Defendant's home. However, none of these facts serve as the basis for any count in the Second Amended Complaint. See doc. # 99. Since the Plaintiff may not amend his Second Amended Complaint through arguments made in his Motion, see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), the Court must also deny the Motion with respect to any right to relief based on the Debtor's payment of these expenses.

**Amounts the Defendant failed to pay T&C for his purchase of company vehicles and equipment**

Turning to the substance of the remaining counts, the Court first addresses the Trustee's claims for recovery and avoidance with respect to T&C's 2009 and 2010 transfer, to Mr. Fisher, of its 2004 GMC Diesel 2500, 2002 Skytrack forklift, John Deere tractor, and 2003 Chevy Silverado. Counts Eleven, Twelve, and Fourteen of the Second Amended Complaint allege that these transfers were constructively fraudulent under 9 V.S.A. §§ 2288(a)(2) and 2289, and 11 U.S.C. § 548(a)(1)(B).

All three of these claims for relief require a showing that the Debtor failed to receive reasonably equivalent value in exchange for the transfer of the property. See 9 V.S.A. §§ 2288(a)(2), 2289(a); 11 U.S.C. § 548(a)(1)(B). Here, the transactions did not take place at arms' length. Instead, the Defendant transferred the property to himself in the capacity of both buyer and seller, at a time when the Debtor's financial situation was dire. Although the record contains no indication of the fair market value of the property, these factors alone suggest that even the agreed-upon purchase price was likely less than reasonably equivalent value. However, since the Trustee did not raise the issue of value, and there is no other basis for determining the value of the property in the record, the Court is willing to accept the amount due under the bills of sale as what would amount to reasonably equivalent value. The undisputed facts establish that the total due under all bills of sale was $47,700, and Mr. Fisher only paid $7,250 of this amount. SUMF, ¶ 20-22; Strattner Decl., ¶¶ 29, 33-34; doc. # 81. Accordingly, Mr. Fisher must pay the Debtor an additional $40,450 to give consideration equal to reasonably equivalent value for this property. Therefore, the Trustee has met his burden of proving the first element – the Defendant's failure

---

[5] Moreover, the record does not support the granting of turnover of this property to Plaintiff, because property that has been fraudulently transferred does not become property of the estate until it is recovered, and turnover only applies to property of the estate. See In re Colonial Realty Co., 980 F.2d 125, 131 (2d Cir. 1992); In re Teligent, Inc., 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005).

8

to pay reasonably equivalent value – as to the causes of action for avoidance and recovery of these property transfers.

The second element the Trustee must prove in order to prevail in the avoidance and recovery of the transfers under 9 V.S.A. § 2289(a) and 11 U.S.C. § 548(a)(1)(B), is that the Debtor was insolvent at the time of the transfers, or became insolvent as the result thereof, and knew or should have known it was incurring debts it would not be able to pay when due. The Court's findings of undisputed material facts show that T&C's net worth for the four-year period prior to the petition, as stated in its balance sheets, never exceeded $1.24 million. Furthermore, T&C failed to include any liability on these statements for the Sullivans' claim. The Sullivans were ultimately awarded $3,270,412 on October 1, 2009, and all but one of the transfers (the John Deere tractor in the amount of $12,500) occurred after this date. See doc. # 81. Thus, the Debtor was conclusively insolvent at the time that it transferred the majority of this property. Moreover, even though the Sullivan liability was not reduced to judgment at the time the Debtor transferred the tractor, the Court concludes, pursuant to the Mama D'Angelo line of cases, that it is appropriate to value the Sullivan liability at $3,270,412 at least as of November 2006, when T&C received a copy of the Lee Accounting. Therefore, the Trustee has met his burden of proving the Debtor-transferor's insolvency for purposes of Counts Twelve and Fourteen.

For the Trustee to establish the second element of proof under 9 V.S.A. § 2288(a)(2), he must show that the Debtor transferred the property when it reasonably should have been aware it was incurring debts it would not be able to pay as they became due. Here, the earliest transfer of the property occurred on October 4, 2009. At that time, the arbitrator had recently awarded the Sullivans a multi-million dollar award, and the Debtor's balance sheets showed negative equity even without factoring in that liability. See doc. # 134-4 at 20. Further, the Debtor had only one active project at the time of the first transfer, that project was terminated less than one week later, and no new projects were ever initiated. Given these circumstances, the Court finds that a reasonable person would believe the Debtor should have been aware it was incurring debts that it could not timely pay. Therefore, the Trustee has met his burden of proving the second element of Count Eleven.

Finally, the Court looks to the timeliness of the claims. Since the transfers occurred within two years of the petition date, the Court finds the Trustee's claims are timely under both state and federal law. See 11 U.S.C. § 548(a)(1); 9 V.S.A. § 2293(2). Accordingly, the Court finds that the Trustee is entitled to judgment as a matter of law on Counts Eleven, Twelve, and Fourteen of the Complaint, and the Trustee is entitled to avoidance of the transfers and recovery of the $40,450 that Mr. Fisher still owes for the purchase of the identified vehicles and equipment.

9

**AMEX charges paid by T&C for the Defendant's sole benefit**

Count Twenty-One alleges that certain AMEX charges paid by T&C on behalf of the Defendant were constructively fraudulent under 9 V.S.A. § 2289. Count Twenty-Three alleges they were constructively fraudulent under 11 U.S.C. § 548(a)(1)(B). To prove the right to avoid and recover these transfers under each provision, the Trustee must demonstrate that: (1) the Debtor was insolvent at the time of, or became insolvent because of, the transfers; and (2) the Debtor received less than reasonably equivalent value in exchange for the transfers.

As discussed above, the Court finds that the Debtor was insolvent at least as of November 2006, when it received a copy of the Lee Accounting. Therefore, the Trustee has established the first element of these claims. Further, as stated in the undisputed material facts section, the Court finds that $76,526.91 of the AMEX charges paid by the 505 account from November 2006 onward were categorically unrelated to T&C's business. SUMF, ¶ 12-14; Strattner Decl., ¶¶ 21-22. Thus, the Court finds that these charges were paid solely for the Defendant's benefit, and that there was no direct benefit to the Debtor. If the record discloses that the Debtor reaped any indirect benefit from these transfers, the Court must take that benefit into consideration in discerning whether the Trustee has met his burden. However, the record is devoid of evidence that the Debtor enjoyed any benefit at all from these payments. While one could argue that the Debtor received the benefit of the Defendant's continued service as the vice president of the company, that is unavailing as the Defendant was otherwise well-compensated for his employment. Thus, the AMEX charge payments were completely gratuitous, and the Court finds that any indirect benefit to the Debtor resulting from these payments was de minimis and less than reasonably equivalent value.

Lastly, the Court finds all payments were made within four years of commencement of this bankruptcy case. Thus, the Trustee's claim is timely under state law, and he is entitled to judgment as a matter of law on Count Twenty-One. To timely avoid a claim under federal law, however, the fraudulent transfer must have occurred within two years pre-petition. Here, although many of the AMEX charges were likely paid within this period, the record is not clear as to what this amount is, and nothing in the record supports that the entire amount the Trustee seeks to recover was paid by the Debtor in the two years pre-petition. Accordingly, the Court must deny the Motion with respect to Count Twenty-Three.

**Finance charges paid by T&C for Defendant's luxury vehicle after T&C ceased business operations**

Count Twenty-Seven alleges that transfers in the amount of $3,382.70 – paid by T&C for the Defendant's luxury car payments after T&C no longer had any ongoing business – were constructively fraudulent under 9 V.S.A. § 2289. Count Twenty-Nine alleges they were constructively fraudulent under 11 U.S.C. § 548(a)(1)(B). Once again, to prove the right to avoid and recover these transfers under each

statute, the Trustee must demonstrate that: (1) the Debtor was insolvent at the time of, or became insolvent because of, the transfers; and (2) the Debtor received less than reasonably equivalent value in exchange for the transfers.

As previously stated, the Court finds that the Debtor was insolvent for the entire four-year period prior to the filing of the bankruptcy petition, and the challenged payments occurred after October 2009, well within this four year period. As to whether the Debtor received reasonably equivalent value in exchange for the car payments, the Court finds that the Debtor received no direct benefit for the transfers, as Mr. Fisher was no longer performing any work on behalf of the Debtor when the Debtor had no active projects. Further, although it is conceivable the Defendant used the vehicle to, e.g., attempt to generate future business, the record contains no evidence to this effect. Moreover, the record contains no evidence to support that the Debtor received any indirect benefit from the car payments. To the contrary, the Trustee's SUMF and Strattner's declaration clearly state that T&C received no benefit for these luxury car payments, and Mr. Fisher never disputed this assertion. SUMF, ¶¶ 17-18; Strattner Decl., ¶¶ 27-28. Accordingly, the Court finds that the Debtor did not receive reasonably equivalent value for the payments. Finally, all of the transfers occurred within the lesser two year statute of limitations of § 548(a)(1)(B). Therefore, the Trustee is entitled to judgment as a matter of law on these causes of action, and to avoid and recover the transfers; the Court grants the Motion with respect to Counts Twenty-Seven and Twenty-Nine of the Second Amended Complaint.

**Proceeds from the sale of T&C's Caterpillar 257B Skidsteer and accessory equipment**

Finally, the Trustee seeks to avoid the transfers and recover $10,056.67 – the amount the Defendant received for consignment of the Debtor's Skidsteer and accessory equipment. Count Thirty-Five alleges that the transfers were constructively fraudulent under 9 V.S.A. § 2288(a)(2). Count Thirty-Six alleges that the transfers were constructively fraudulent under 9 V.S.A. § 2289. Count Thirty-Eight alleges they were constructively fraudulent under 11 U.S.C. § 548(a)(1)(B).

To obtain avoidance and recovery of the transfers under 9 V.S.A. § 2289(a) and 11 U.S.C. § 548(a)(1)(B), the Trustee must demonstrate that the Debtor was insolvent at the time of the transfers, or became insolvent as the result thereof. The Court has already determined that the Debtor was insolvent as of November 2006, and the Defendant did not consign the equipment until early 2010.

For the Trustee to avoid and recover the transfer under 9 V.S.A. § 2288(a)(2), he must show that the Debtor transferred the property when, if acting reasonably, it would have recognized that it was incurring debts it would not be able to pay as they became due. As stated in the discussion relating to avoidance of the vehicle transfers, above, by the time that the Defendant consigned this property, the

11

arbitrator had already awarded the Sullivans a multi-million dollar award.  Factoring in that liability, the Debtor's liabilities exceeded its assets by approximately $2.5 million.  See doc. # 134-4 at 10.  Further, the Debtor had not had any active projects for a few months, and no new projects were then pending or ever initiated.  Given these circumstances, the Court finds that any reasonable person would believe the Debtor should have realized that it was incurring debts it would not be able to pay when they became due.

These three claims for relief also require that the Trustee to prove the Debtor failed to receive reasonably equivalent value in exchange for the transfer of the property.  See 9 V.S.A. §§ 2288(a)(2), 2289(a); 11 U.S.C. § 548(a)(1)(B).  Here, the record is unequivocal that the Debtor received absolutely nothing in exchange for the transfers.  See Strattner Decl., ¶¶ 35-36; Declaration of Alan Johnson, ¶¶ 3-4.  Accordingly, the Court finds that the Debtor failed to receive reasonably equivalent value.

Finally, the Court must examine whether the transfers at issue in these causes of action were timely.  Since the subject transfers of equipment occurred within two years of the petition date, the Trustee's claims are timely under both state and federal law.  See 11 U.S.C. § 548(a)(1); 9 V.S.A. § 2293(2).  Therefore, the Trustee is entitled to judgment as a matter of law on these causes of actions, the subject transfers are avoidable, and the Court grants the Motion with respect to Counts Thirty-Five, Thirty-Six, and Thirty-Eight of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court finds there are no material facts in dispute with respect to most of the claims asserted in the Motion, and the Plaintiff is entitled to judgment as a matter of law as to those in which he has met his burden of proof.  Specifically, the Court declares the transfers to be fraudulent, and the transferred property to be recoverable, with respect to Counts Eleven, Twelve, Fourteen, Twenty-One, Twenty-Seven, Twenty-Nine, Thirty-Five, Thirty-Six, and Thirty-Eight of the Second Amended Complaint.  The Court denies the Motion with respect to Counts Nine, Twenty, and Twenty-Three of the Second Amended Complaint.  It also denies relief on the claim the Trustee asserts relating to the Debtor's alleged purchase and installation of a wood boiler for the benefit of the Defendant, as the Trustee raised this for the first time in the Motion and did not assert it in the Second Amended Complaint.

This memorandum constitutes the Court's findings of fact and conclusions of law.

_____
March 14, 2014                                                         Colleen A. Brown
Burlington, Vermont                                                United States Bankruptcy Judge