*Formatted for Electronic Distribution*                                                                                                          *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
May 14, 2014

_____

**In re**
    **Turner & Cook, Inc.,**                                                                                                       Chapter 7
                **Debtor.**                                                                                                    Case # 10-11344
_____

**John R. Canney, III, Trustee,**
                **Plaintiff,**                                                                                  Adversary Proceeding
            v.                                                                                                             # 11-1033
**Fisher & Strattner, LLC, et al.,**
                **Defendants.**
_____

| Appearances: | John R. Canney, III, Esq. | Peter Bilowz, Esq. | Mark Fisher |
|---|---|---|---|
| | Rutland, VT | Goulston & Stores, P.C. | Jacksonville, VT |
| | Chapter 7 Trustee | Boston, MA | Pro se Defendant |
| | Plaintiff | For the Trustee | |

## MEMORANDUM OF DECISION
### DENYING DEFENDANT'S MOTION TO RECONSIDER

      Mark Fisher (the "Defendant" or "Mr. Fisher") moves for reconsideration of the Court's March 14th decision and order granting partial summary judgment in favor of the Chapter 7 Trustee (the "Plaintiff" or "Trustee").  For the reasons set forth below, the Court finds that there is no basis to alter its prior decision or order.  Accordingly, Mr. Fisher's motion is denied.

### JURISDICTION

      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. The Court declares the claims addressed by the instant motion to be core matters under 28 U.S.C. § 157(b)(2)(F) and (H), over which this Court has constitutional authority to enter a final judgment. To the extent any of the claims in the Plaintiff's second amended complaint are outside this Court's constitutional authority pursuant to Stern v. Marshall, 1325 S. Ct. 56 (2011), those claims were not addressed by the original decision and order granting partial summary judgment, and therefore are not considered in this decision.

**PROCEDURAL HISTORY**

On December 5, 2011, the Trustee filed a complaint initiating this adversary proceeding which sought, among other requested relief, avoidance of certain alleged fraudulent transfers from Turner & Cook, Inc. ("T&C" or the "Debtor") to Mr. Fisher, and recovery of the transferred property (doc. # 1).[1] On June 1, 2012, the Trustee filed an amended complaint (doc. # 33). The Court entered a scheduling order on July 30, 2012, which gave the parties until March 4, 2013 to file dispositive motions (doc. # 46).

As of November 15, 2012, Mr. Fisher had not yet filed an answer or any response to the amended complaint, so on that date the Trustee filed an application for entry of default against the Defendant (doc. # 56). After a hearing held on the application on December 18, 2012, the Court granted Mr. Fisher's request for an extension of time to respond to the amended complaint, and ordered him to respond by January 21, 2013 (doc. ## 64, 71). On January 23, 2013, Mr. Fisher moved for an extension of time to respond, citing his health condition and *pro se* status (doc. # 74). After a hearing held on January 25, 2013, the Court ordered Mr. Fisher to provide evidence of his health condition and turn over certain discovery documents; it set a further hearing on the Defendant's request for February 19, 2014 (doc. # 77). The Court then granted additional extensions of time for Mr. Fisher to turn over the required documents and held continued hearings on the matter on March 26 and May 21, 2013 (doc. ## 88, 93). The Trustee filed a second amended complaint on May 16, 2013, to which the Defendant responded by cursorily denying the majority of the allegations (doc. ## 99, 113). The Court then entered a resulting scheduling order setting further deadlines for the production of documents and requiring all dispositive motions to be filed by January 2, 2014 (doc. # 108).

Based on Mr. Fisher's non-compliance with production of certain documents, the Court granted an additional and final extension of time in which to file dispositive motions (doc. ## 111, 122). The Trustee then filed a timely motion for partial summary judgment with memorandum of law, on January 30, 2014 (doc. ## 131, 132). Pursuant to the order entered February 4, 2014, Mr. Fisher's response to the summary judgment motion was due February 21, 2014 (doc. # 140). In the order, the Court specifically informed Mr. Fisher that if he failed to respond to the motion, and failed to file a motion setting forth cause for an extension of time to do so, by February 21, 2014, he risked having the Court enter a default judgment against him. On February 21, 2014, Mr. Fisher filed a motion for an extension of time to respond to the summary judgment motion, which the Trustee opposed (doc. ## 142, 143). The Court denied the request, concluding that Mr. Fisher's request for a further extension of time failed to establish cause for a further extension and could not be justified at the expense of the Debtor's estate and its creditors (doc. # 144).

---

[1] Unless otherwise noted, all citations to the record refer to AP # 11-1033, Canney v. Fisher & Strattner, LLC, et al.

Accordingly, the Court treated the summary judgment motion as unopposed, and took the matter under advisement.

Mr. Fisher did not timely challenge the Court's denial of an extension of time to respond, and the Court partially granted the summary judgment motion on March 14, 2014 (doc. ## 146, 147). Specifically, the Court found that avoidance and recovery of the following transactions was warranted: (1) the Debtor's transfer of a 2004 GMC Diesel 2500, 2002 Skytrack forklift, John Deere tractor, and 2003 Chevy Silverado to Mr. Fisher; (2) the Debtor's payment of certain credit card charges on behalf of Mr. Fisher; (3) the Debtor's payment of Mr. Fisher's luxury vehicle finance charges after the Debtor ceased business operations; and (4) Mr. Fisher's receipt of payments from consigning the Debtor's skidsteer and accessory equipment.

On March 26, 2014, Mr. Fisher moved for reconsideration of the Court's March 14th decision and order granting partial summary judgment in favor of the Trustee, supporting his request with newly submitted evidence (doc. # 153) (collectively, the "Motion"). The Motion raises arguments as to the merits of the case, and alleges the Trustee procured the relief set out in March 14th decision and order through fraud. In light of the gravity of the Defendant's allegations, the Court entered an order setting deadlines for responses and a hearing on the Motion (doc. # 156) (the "Order").

In the Order, the Court held that to the extent that Mr. Fisher was actually seeking reconsideration of the Court's order denying Mr. Fisher's request for an extension of time to respond to the Trustee's summary judgment motion, the Motion was too late, as there was no legal basis to allow Mr. Fisher to wait for the outcome of the summary judgment motion before challenging the order denying an extension of time to respond to the summary judgment motion. The Court further found that it had acted well within its discretion in denying the motion for an extension of time, given the numerous extensions Mr. Fisher had previously received in this case. The Court also found that Mr. Fisher's bold and serious accusations - concerning the alleged conduct of Trustee's counsel and alleged fabrications in the affidavit of the Debtor's former officer - were both late and not sufficiently substantiated. However, in light of Mr. Fisher's *pro se* status, the alleged evidence in support of his allegation that the Trustee had committed a fraud on the Court, and the fact that the Motion presented averments sounding like potential grounds for relief under Rule 60(b), the Court allowed Mr. Fisher an opportunity to present his legal argument, and evidence to demonstrate the facts he alleged, in support of the Motion. The Court was clear, however, that Mr. Fisher was required to make a substantial showing that "(1) the Trustee obtained summary judgment relief through fraud, or (2) that vacating the March 14th decision to allow Mr. Fisher to present a defense to the Trustee's summary judgment motion [wa]s necessary to avoid manifest injustice."

After a hearing held on April 4, 2014, the Court entered another order amending the dates set forth in its prior Order (doc. # 160) (the "Amended Order").  Mr. Fisher filed additional pleadings in support of his Motion on April 18 and 21, 2014 (doc. ## 164, 165) (collectively, the "Supplement").  On May 5, 2014, the Trustee responded to the Supplement (doc. # 166) (the "Response").  Mr. Fisher then filed a reply to the Response on May 12, 2014 (doc. # 167) (the "Reply").  Thereafter, the matter was fully submitted, and the Court took the matter under advisement.

## RULE 60(B) STANDARD

Federal Rule of Civil Procedure 60, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, provides:

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)   mistake, inadvertence, surprise, or excusable neglect;
> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)   the judgment is void;
> (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)   any other reason that justifies relief.

Fed.R.Civ.P. 60(b).  Motions under Rule 60(b) are addressed to the sound discretion of the court.  In re Spiegel, Inc., 269 Fed. Appx. 56, 57 (2d Cir. 2008) (citing Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir.1990).  The two specific parts of Rule 60(b) invoked by Mr. Fisher's allegations are (b)(3) and (b)(6).

"[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."  Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989).  "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case."  State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004) (quotations omitted).  In other words, if a movant knew of - or could have with due diligence discovered - the fraud, before or during the initial proceeding, said fraud cannot serve as the basis for relief from judgment under Rule 60(b)(3).  See Tolkin v. Pergament, No. 11-3467, 2012 WL 1132475 at *7 (E.D.N.Y., March 31, 2012); see also Casey v. Albertson's, Inc., 362 F.3d 1254, 1260 (9th Cir. 2004) ("[R]ule [60(b)(3)] requires that [the] fraud not be discoverable by due diligence before or during the proceedings.").

"Courts use Rule 60(b)(6) relief sparingly as an equitable remedy to prevent manifest injustice and

4

grant relief only where extraordinary circumstances prevent a party from taking timely action to prevent or correct an erroneous judgment." Hewitt v. Alcan Aluminum Corp., 185 F.Supp.2d 183, 192 (N.D.N.Y. 2001) (quotations omitted). "Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply." ISC Holding AG v. Nobel Biocare Finance AG, 688 F.3d 98, 109 (2d Cir. 2012). A proper case for Rule 60(b)(6) relief is only one of "extraordinary circumstances, or where the judgment may work an extreme and undue hardship." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 56 (2d Cir. 2004); see also Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004). Put another way, the scope of Rule 60(b)(6) is "extremely meagre." United States v. Karahalias, 205 F.2d 331, 333 (2d Cir. 1953).

## DISCUSSION

Initially, the Court notes that the only claims upon which Mr. Fisher seeks reconsideration are those relating to the Debtor's transfer to him of a 2004 GMC Diesel 2500, 2002 Skytrack forklift, John Deere tractor, and a 2003 Chevy Silverado.[2] Therefore, the Court addresses only those claims in this decision. For the following reasons, the Court finds that Mr. Fisher has not met his burden of proving he is entitled to relief from any portion of the decision and order granting partial summary judgment in favor of the Trustee.

### Rule 60(b)(3) Relief

Concerning his attempt to obtain relief pursuant to Rule 60(b)(3), the Court first notes that none of Mr. Fisher's arguments suggest that the alleged fraud prevented him from fully and fairly presenting his case. To the contrary, the Motion and Supplement both allege that the fraud was apparent from the Trustee's motion and evidence in support of his request for summary judgment. For example, Mr. Fisher challenges the truthfulness of the statements his former business partner, Mr. Strattner, made in his affidavit, and a loan account transaction record, both of which were filed in support of the summary judgment motion. Mr. Fisher suggests that the affidavit was obtained through financial bribery, and that the account record was doctored to support the allegations set out in the summary judgment motion. Even if the evidence the Trustee submitted in support of the summary judgment motion was not truthful, Mr. Fisher does not explain how that evidence prevented him from timely opposing the summary judgment motion. Mr. Fisher's pleadings argue only that his failure to timely object to the evidence was due to health problems - which Mr. Fisher previously relied on to justify numerous prior delays in this case, and

---

[2] Interestingly, the Trustee suggests that Mr. Fisher may raise arguments with respect to these claims only, as they relate to the only non-exempt property from which the Trustee could satisfy the judgment. If this is the case, even if Mr. Fisher had shown that avoidance of the vehicle and equipment transfers was not warranted, the Trustee could still levy on this property, as the claims relating to avoidance of the vehicle and equipment transfers only amounted to $40,450, Mr. Fisher does not challenge the grant of relief in favor of the Trustee on any other claims, and the total judgment amount was $130,416.28.

5

which the Court found he had failed to adequately document – and lack of counsel, which the Court gave Mr. Fisher ample opportunity to remedy.  In sum, the Court finds Mr. Fisher's fraud allegations are an attempt to relitigate the merits of the summary judgment motion, and fail to meet the standard for relief under Rule 60(b)(3).  See State Street Bank and Trust Co., 374 F.3d at 176; Fleming, 865 F.2d at 484.

Assuming, *arguendo*, that the alleged fraud was of the type sufficient to support Rule 60(b)(3) relief, Mr. Fisher has failed to submit clear and convincing evidence to support those allegations.  The Court's Order entered in response to the Motion found that the Defendant's allegations of fraud were not "sufficiently substantiated" to warrant relief.  Thus, the Court looks primarily to the Supplement to determine whether the Defendant has not cured that flaw and sufficiently substantiated his accusations.  The Court finds the Supplement falls far short of establishing fraud by clear and convincing evidence.

Mr. Fisher supports his allegations that the Trustee "bribed" Mr. Strattner and that, in return, Mr. Strattner falsified evidence, solely with cursory statements based on his own personal information and belief.  For example, Mr. Fisher contests the Response's assertion that Mr. Strattner did not receive significant financial consideration in exchange for his cooperation, saying that, "[f]rom [his] perspective, Strattner clearly received financial consideration for his cooperation and had a motive to lie.  He avoided a multi-million dollar arbitration judgment[3] for a payment of $37,500" (doc. #167 at 3).  This allegation fails to take account that this adversary proceeding is not concerned with Mr. Strattner's liability on any arbitration award.  Rather, it is an attempt to maximize the property of the estate in the Debtor's bankruptcy case for the benefit of the Debtor's creditors. In this proceeding, the Trustee is attempting to recover the Debtor's property that was wrongfully transferred pre-petition.  Assuming that Mr. Strattner was liable on the arbitration award, and that it was not solely entered against the Debtor, any settlement between the Trustee and Mr. Strattner in this adversary proceeding would have no impact on Mr. Strattner's liability to the Sullivans.

Mr. Fisher's other assertions of fraud are similarly misplaced, and he does not explain how he obtained his "information" or otherwise support it with tangible proof.  For instance, Mr. Fisher further claims that the shareholder loan account was fictitious.  However, given the affidavits of Mr. Strattner and Gary Fitzgerald, discussed *infra*, the Court finds their combined declarations, coupled with their first-hand and comprehensive knowledge of the Debtor's financial situation, to be more credible concerning this account.

The only claim Mr. Fisher sufficiently substantiated is that he wrote several checks in exchange for

---

[3] Although not precisely specified, the Court presumes that Mr. Fisher is referring to the October 2009 Sullivan arbitration judgment against the Debtor in the amount of $3,270,412, discussed in the decision and order granting partial summary judgment in favor of the Trustee.

6

the transfer of the vehicles and equipment. He attached to his Supplement copies of checks he wrote to the Debtor, with notations that the payments were for specific vehicles or equipment in the memo section of the checks. However, the Trustee's Response clearly articulates a detailed basis for the Debtor's application of these payments against Mr. Fisher's shareholder loan account. Specifically, the Response asserts that Mr. Fisher never directed T&C to apply these payments toward his purchase of the vehicles and equipment. Although Mr. Fisher appears to rely on the memo sections of certain checks and bills of sale as evidence of the intended application, there is nothing in the record to show that this payment detail was ever provided to T&C or its accountants even after the Trustee made repeated requests for that information. As set forth in the Declaration of Gary Fitzgerald of DSF, T&C's accountants, DSF specifically asked Mr. Fisher to provide evidence of payments for the vehicles and equipment and Mr. Fisher never responded. See doc. # 166-1, Fitzgerald Decl., ¶ 3. DSF never received copies of any checks from Mr. Fisher evidencing payment for the vehicles and equipment he took from T&C nor any other information concerning those transfers. Id. at ¶ 5. At no time did Mr. Fisher ever request that DSF allocate any payments made by him to T&C for the vehicles and equipment. Id.

Similarly, Mr. Strattner - who worked with DSF to prepare financial statements and tax returns for T&C - was neither privy to Mr. Fisher's personal account check deposits in T&C's bank account nor aware of any payment application information on the checks from an account Mr. Fisher himself controlled. See doc. # 166-3, Strattner Decl., ¶ 11. Both Mr. Strattner and DSF repeatedly attempted, without success, to obtain information from Mr. Fisher concerning the vehicles and equipment he took or any payments he made for their purchase. Id. at ¶ 12. Despite these numerous attempts, the Debtor was unable to obtain information from Mr. Fisher as to how to apply these payments.

In his Reply, Mr. Fisher suggests that Mr. Strattner falsely claimed not to have seen copies of the checks pre-petition, and certainly should have known that the sums Mr. Fisher paid with the checks was to have been credited towards the purchase of the vehicles and equipment. Mr. Fisher supports this assertion by citing a letter from DSF to Mr. Strattner, which was attached to the Response, and which references "the assets that [Mr. Fisher] purchased from the company, which [DSF] previously reviewed with [Mr. Strattner] and the amount paid for each piece of equipment." This statement does not, however, support Mr. Fisher's assertion. It merely shows that DSF and Mr. Strattner were aware that Mr. Fisher had purchased assets from the company. The Response does not challenge this fact, as it is irrelevant to the controlling factor in determining whether the Debtor received reasonably equivalent value in exchange for the transfers of the vehicles and equipment - the amount that was actually paid by Mr. Fisher towards the

7

purchase of this property. As clearly stated in the affidavits, neither DSF nor Mr. Strattner was aware of the amount Mr. Fisher paid for these assets because Mr. Fisher refused to respond to their repeated requests for information, and Mr. Fisher himself controlled the account to which the checks were made out. Read in this context, the statement Mr. Fisher cites in the letter supports this DSF / Strattner assertion. Accordingly, the Court finds nothing to indicate that T&C's application of the payments from Mr. Fisher to his outstanding shareholder loan account balance was improper. See Briggs v. Hosea Williams and Sons, 2 Vt. 283 (1829) (noting that if a debtor fails to exercise his right to direct the application of his payment to a creditor, the creditor has a right to make his election).

Finally, even assuming that Mr. Fisher's checks should have been credited towards payment of the vehicles and equipment as he claims, the shareholder loan account record shows that Mr. Fisher received substantially contemporaneous loans from the Debtor in an amount roughly equivalent to his payments towards the vehicle and equipment transactions. The Trustee's second amended complaint included claims for relief relating to the amounts Mr. Fisher owed on the shareholder loan account. The March 14th decision and order did not rely on this alternative basis for granting relief because the summary judgment motion did not seek relief on this count, and because it was undisputed that Mr. Fisher had only paid $7,250 towards the amount due on his purchase of the vehicles and equipment.[4] Thus, the Trustee was clearly entitled to relief on the vehicle and equipment transfer claims, and the Court did not need an alternative basis for granting relief. If Mr. Fisher's checks had been credited towards amounts due on the vehicle transactions, the Trustee would have been entitled to recover substantially the same judgment amount by moving for summary judgment on the shareholder loan account claim.

For the foregoing reasons, the Court finds that Mr. Fisher has failed to establish he is entitled to relief from the March 14th decision and order pursuant to Rule 60(b)(3).

## Rule 60(b)(6) Relief

Because Mr. Fisher has failed to show that relief is warranted under Rule 60(b)(3), any alleged fraud cannot serve as the basis for relief pursuant to Rule 60(b)(6). See ISC Holding AG, 688 F.3d at 109. Further, the Court observes that - particularly in the context of this case - there was nothing extraordinary about the circumstances that prevented Mr. Fisher from timely opposing the Trustee's summary judgment motion. Rather, they were very ordinary, as they were the same circumstances that have supposedly prevented Mr. Fisher from timely complying with numerous other deadlines in the prior two-plus years in which this adversary proceeding has been pending. Thus, there is no need for this Court to consider

---

[4] Mr. Fisher asserts that "at all times, it was known to all parties concerned that [he] disputed the fraud alleged against [him], and that . . . [the Debtor] received a reasonably equivalent value in exchange for the transfer." For purposes of the summary judgment motion, however, the relevant consideration is evidence in the record, not what everyone alleged knew.

8

whether avoidance and recovery of the vehicle and equipment transfers would amount to a manifest injustice to conclude that relief is not warranted under Rule 60(b)(6). See Hewitt, 185 F.Supp.2d at 192. In the interest of thoroughness, however, the Court does, and concludes that Mr. Fisher has failed to make the requisite showing.

Mr. Fisher asserts that depriving him of the vehicles and equipment would amount to manifest injustice because he is disabled and needs them for snow removal purposes in the harsh Vermont winters. While the Court recognizes that it may pose a hardship to Mr. Fisher to lose this equipment, the Court does not find that the hardship is undue and extreme, or that these circumstances are so extraordinary so as to fall under the extremely meager scope of Rule 60(b)(6). As the Trustee notes, Mr. Fisher has had the unwarranted benefit of using the Debtor's property for five years, solely as a result of his improper pre-petition dealing. Mr. Fisher contends that there was nothing actually fraudulent about the transactions, and that he acted in good faith, relying on the advice of an attorney in conducting the transactions. However, as stated in the Court's March 14th decision, the Court found that the transactions were constructively fraudulent, as the Debtor transferred the vehicles and equipment to Mr. Fisher for less than reasonably equivalent value at a time when it was insolvent, and was not required to determine Mr. Fisher's intent at the time of the transactions. Because Mr. Fisher did not pay reasonably equivalent value for the vehicles and equipment, whether he relied on an attorney's advice in engaging in those transactions is not relevant to whether avoidance and recovery of those transactions constitutes a manifest injustice.

Accordingly, the Court finds that Mr. Fisher has failed to establish he is entitled to relief from the March 14th decision and order pursuant to Rule 60(b)(6).

## CONCLUSION

For the reasons set out above, the Court finds that Mr. Fisher has not met his burden of proving that he is entitled to relief from any portion of the decision and order granting partial summary judgment in favor of the Trustee. Accordingly, the Defendant's motion is denied, and the March 14th decision and order and the resulting judgment against Mr. Fisher, entered on March 24, 2014, stand.

This memorandum constitutes the Court's findings of fact and conclusions of law.

May 14, 2014  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge

9